UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY D. MOORE,

                Petitioner,

                                          CASE NO. 2:11CV-10798

v.                                    JUDGE PAUL D. BORMAN

                                          MAGISTRATE JUDGE PAUL J. KOMIVES

PAUL KLEE,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus and should deny petitioner a certificate of appealability.

II.    <u>REPORT</u>:

A.    *Procedural History*

      1.    Petitioner Anthony D. Moore is a state prisoner, currently confined at the Gus Harrison Correctional Facility in Adrian, Michigan.

      2.    On February 12, 2009, petitioner was convicted of first degree murder, MICH. COMP. LAWS § 750.316; possession of a firearm by a felon, MICH. COMP. LAWS § 750.224f; and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, following a jury trial in the Wayne County Circuit Court. On March 27, 2009, he was sentenced to a mandatory term of life imprisonment without possibility of parole on the murder conviction, a concurrent term of 6-20 years' imprisonment on the felon in possession conviction, and a mandatory consecutive term of two years' imprisonment on the felony-firearm conviction.

      3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through

counsel, the following claim:

> MR. MOORE WAS DENIED HIS SIXTH AMENDMENT RIGHT TO THE
> EFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL DEPRIVED MR.
> MOORE OF A SUBSTANTIAL DEFENSE BY FAILING TO ARGUE THE MOST
> REASONABLE EXCULPATORY INFERENCES FROM THE RECORD, i.e.,
> THAT THE PROSECUTION'S KEY WITNESS – TESTIFYING PURSUANT TO
> A PLEA AGREEMENT IN AN UNRELATED MATTER, AND WHO WAS
> ARRESTED WITH A WEAPON POSSIBLY RELATED TO THIS HOMICIDE,
> AND WHO HAD STRONG MOTIVES TO FABRICATE THE ALLEGATIONS
> AGAINST MR. MOORE – COMMITTED THE OFFENSE.   COUNSEL'S
> FAILURE PREVENTED MR. MOORE FROM FULLY DEFENDING THE
> CHARGES AND CONFRONTING THE EVIDENCE, IN CONTRAVENTION OF
> MR. MOORE'S SIXTH AND FOURTEENTH AMENDMENT RIGHTS, AND
> CONST. 1963, ART. 1, §§ 17, 20.

The court of appeals found no merit to petitioner's claim, and affirmed his convictions and sentences. *See People v. Moore*, No. 291249, 2010 WL 2793542 (Mich. Ct. App. July 15, 2010) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal this issue to the Michigan Supreme Court.  The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Moore*, 488 Mich. 914, 789 N.W.2d 450 (2010).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on March 31, 2011.[1]  As grounds for the writ of habeas corpus, he raises the same claim that he

---

[1]On February 28, 2011, petitioner filed a "Motion for Protective Petitioner," apparently seeking a stay to exhaust an additional issue.  The motion did not include the issues petitioner sought to exhaust. On March 10, 2011, Magistrate Judge Whalen entered an order directing petitioner to correct a deficiency, namely, his failure to pay the filing fee or apply for *in forma pauperis* status.  Included with the order sent to petitioner was a form habeas petition and *in forma pauperis* application.  Petitioner filed his form petition on March 31, 2011.  On that form, petitioner indicated that he had not filed any post-conviction motions in the state courts.

raised in the state courts, although less artfully stated.[2]

6.     Respondent filed his answer on September 7, 2011.  He contends that petitioner's

claim is without merit.

B.     *Factual Background Underlying Petitioner's Conviction*

The facts underlying petitioner's convictions were accurately summarized by the Michigan

Court of Appeals:

> Defendant's convictions arise from the death of Nia Clark, whose body was
> discovered in an alley at approximately 3:00 a.m. on August 1, 2007. The principal
> witness against defendant was Antwone Jasper, who testified that he, defendant, and
> a man known as "Cheeto" were members of a drug organization run by a man known
> as "Shoes." Jasper testified that sometime after midnight, he was sitting on the porch
> with Clark when defendant and Cheeto came by. Defendant asked Clark to go for a
> walk with him and they left together. About half an hour later, Jasper heard gunshots.
> Five minutes after that, defendant came through the backyard and was breathing
> heavily. He gave what appeared to be a semi-automatic handgun to Cheeto, who then
> left. Defendant asked Jasper "did they fingerprint bodies in Michigan." According
> to Jasper, defendant later admitted to having killed Clark because "she was
> snitching."

*Moore*, 2010 WL 2793542, at *1.

C.     *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996).  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in

---

[2]Specifically, petitioner states his claim as follows: "Counsel failed to pursuant [sic] to a plea
agreement in an unrelated matter where as the prosecution's key witness who was arrested with a
weapon possibly related to this murder in [sic] also had motives to fabricate."

custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

      (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

      (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409. As the Supreme Court has explained, the standard for relief under § 2254(d) "is difficult to meet, [and] that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). As the Court explained, "[s]ection

4

2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id*. (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in the judgment)). Thus, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412). The relevant "clearly established law" is the law that existed at the time of the last state court decision to issue a reasoned decision on the claim, *see Greene v. Fisher*, 132 S. Ct. 38, 44-45 (2011), and in evaluating the reasonableness of that decision a federal habeas court is limited to the record that was before the state court at the time of its decision, *see Cullen v. Pinholster*, 131 S. Ct. 1388, 1398-99 (2011).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not

5

require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.     *Analysis*

        Petitioner claims that counsel was ineffective for failing to pursue a theory that Jasper, who was testifying pursuant to a plea deal and had a motive to fabricate, may have committed the murder himself.[3]  The Court should conclude that petitioner is not entitled to habeas relief on this claim.

        1.     *Clearly Established Law*

        The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *Id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the

_____

        [3]Because petitioner has not submitted any brief in support of his habeas application, I rely on the arguments raised by counsel in petitioner's state appellate brief.

defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later

7

reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id*., at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.

Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id*., at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

2.    *Analysis*

During Jasper's testimony, a number of facts of benefit to petitioner were elicited. Petitioner argues that counsel was ineffective for failing to more forcefully highlight these facts in closing argument, and in particular to argue that Jasper himself may have killed the victim. The Michigan Court of Appeals rejected this claim, reasoning:

We cannot conclude that defense counsel's decision to argue that Jasper's testimony was not worthy of belief was unsound strategy. Jasper's testimony was the only evidence linking defendant to the crime. Counsel elicited evidence that Jasper was not a credible witness, in part because (1) Jasper had motives for falsely accusing defendant (to take his place in Shoes's organization and to obtain leniency in his own criminal case), (2) Jasper's claim that he was on the porch with Clark was contradicted by another witness, who stated that Clark was alone, and (3) there were various inconsistencies between Jasper's trial testimony and his prior statements or the testimony of other witnesses. Counsel mentioned most of these points in his closing argument and plainly stated that Jasper, who is "a liar" and "has lied all over the place," would "do whatever is necessary" to save himself. Although counsel did

8

not specifically argue that Jasper was motivated to falsely accuse defendant so that he could move up in Shoes's drug organization, it cannot be said that this omission, in the context of an entire argument primarily dedicated to Jasper's lack of credibility, was so serious that the jury was unable to understand the thrust of the defense theory of the case without it. Further, the decision to focus on Jasper's lack of credibility rather than argue that Jasper killed Clark himself was not unreasonable because that theory is purely speculative, whereas counsel had solid evidence to support his argument that Jasper was lying. Counsel is not ineffective for failing to raise a baseless defense.

*Moore*, 2010 WL 2793542, at *2. This determination was reasonable.

As the Supreme Court has recently explained:

counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should sharpen and clarify the issues for resolution by the trier of fact, but which issues to sharpen and how best to clarify them are questions with many reasonable answers. Indeed, it might sometimes make sense to forgo closing argument altogether. Judicial review of a defense attorney's summation is therefore highly deferential–and doubly deferential when it is conducted through the lens of federal habeas.

*Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (internal citations and quotations omitted). Petitioner has failed to show that counsel's argument was not a reasonable tactical decision. Here, it is true, counsel could have highlighted additional bases to question Jasper's testimony. However, it is equally true that counsel thoroughly attempted to discredit Jasper, noting that his testimony was inconsistent with his prior statements and the testimony of other witnesses, and he had two motives to testify falsely–namely, to move up in the drug organization and to escape his own criminal charges. This decision to focus on Jasper's credibility was a reasonable trial strategy in light of the fact that the prosecution's case against petitioner rose or fell on Jasper's testimony. Nor can petitioner show that counsel was ineffective for failing to argue that Jasper may have committed the murder. Decisions about what defenses to pursue or not pursue are "[a]mong the 'virtually

9

unchallengeable' tactical decision left to the judgment of trial counsel." *Gluzman v. United States*, 124 F. Supp. 2d 171, 174 (S.D.N.Y. 2000). There was simply no evidence brought out at trial tying Jasper to the murder, nor has petitioner identified any such evidence that was not brought out at trial. "In the absence of any evidence beyond motive to support petitioner's theory, counsel was more than reasonable in concluding that the best strategy was to mount a general reasonable doubt defense attacking the strength of the prosecution's evidence and the inferences drawn from that evidence by the prosecution, rather than what might well have appeared to the jury as a desperate attempt to blame someone else for a murder that petitioner committed." *Kowalak v. Scutt*, 712 F. Supp. 2d 657, 702 (E.D. Mich. 2010) (Murphy, J., adopting recommendation of Komives, M.J.). Accordingly, the Michigan Court of Appeals's rejection of petitioner's claim was reasonable, and the Court should conclude that petitioner is not entitled to habeas relief.

E.      *Recommendation Regarding Certificate of Appealability*

1.      *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a

10

"substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

11

2.      *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claim, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  As explained above, counsel's decisions regarding the strategy to pursue and the evidence to highlight during closing argument are the type of strategic decisions that are particularly difficult to attack.  In light of the evidence at trial, the conclusion that counsel performed adequately in focusing on Jasper's lack of credibility is not reasonably debatable.  Accordingly, the Court should deny petitioner a certificate of appealability.

F.      *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law.  Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.  If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health*

*& Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


     s/ Paul J. Komives            
     PAUL J. KOMIVES
     UNITED STATES MAGISTRATE JUDGE

Dated: July 2, 2013


PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Anthony Moore and Counsel of Record on this date.

Dated: July 2, 2013              s/ Lisa C. Bartlett    
                             Case Manager